This Opinion is a
Precedent of the TTAB

Mailed: June 30, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Driven Innovations, Inc.*

_____

Serial No. 77073701

_____

Mike Rodenbaugh of Rodenbaugh Law,
    for Driven Innovations, Inc.

Seth A. Rappaport, Trademark Examining Attorney, Law Office 103,
    Michael Hamilton, Managing Attorney.

_____

Before Rogers, Chief Administrative Trademark Judge, Richey, Deputy Chief
Administrative Trademark Judge, and Bucher, Mermelstein and Wolfson,
    Administrative Trademark Judges.

Opinion by Wolfson, Administrative Trademark Judge:

Upon receiving Applicant's statement of use after approving the mark in this application for publication and the issuance of a notice of allowance, the Trademark Examining Attorney determined that it was "clear error" under Section 1109.08 of the Trademark Manual of Examining Procedure ("TMEP") (January 2015) to have failed to refuse registration on the basis of descriptiveness during that initial examination, and he refused the mark under Sections 1, 2, 3 and 45 and Section

2(e)(1) of the Trademark Act.[1] In this appeal, we hold that an applicant may not separately challenge, either by petition to the Director or on appeal to the Board, the Office's determination of "clear error." Instead, an applicant's recourse is to appeal the substantive refusal to the Board. To the extent that two earlier Board decisions,[2] reflective of then current Office practice, suggest that an applicant could petition the Director for review of a "clear error" determination, we now expressly overrule those decisions because current Office practice does not allow such petitions. We also affirm the descriptiveness refusal on its merits.

## BACKGROUND

Driven Innovations, Inc. ("Applicant") seeks registration on the Principal Register of the designation DOTBLOG (in standard characters) for "providing specific information as requested by customers via the Internet," in International Class 42.[3]

---

[1] Although the Examining Attorney noted in the Final Office Action dated November 15, 2013, that a descriptiveness refusal should have issued during initial examination, he did not expressly state that a "clear error" was made. However, it is not imperative for him to have done so. As explained in *In re Jump Designs LLC,* 80 USPQ2d 1370, 1373 (TTAB 2006), "[g]iven the procedural posture of the application, it should have been obvious to applicant that the examining attorney made the [Section 2(e)(1)] refusal under the 'clear error' standard." (holding that the lack of a statement in the Office action that a substantive refusal was made under the 'clear error' standard did not excuse applicant from following procedure or enable Board to consider applicability of the standard). *Jump Designs* is discussed more fully, *infra.*

[2] *In re Sambado & Son Inc.,* 45 USPQ2d 1312 (TTAB 1997) and *In re Jump Designs LLC,* 80 USPQ2d 1370 (TTAB 2006).

[3] Application Serial No. 77073701 was filed on December 29, 2006, based on Applicant's *bona fide* intent to use the mark in commerce. A statement of use was filed on September 9, 2012.

The Examining Attorney has refused registration of Applicant's designation under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), having determined during examination of Applicant's statement of use that the applied-for mark merely describes the subject matter of Applicant's services. Registration has also been refused under Trademark Act Sections 1, 2, 3 and 45, 15 U.S.C. §§ 1051-53, 1127, because the term fails to function as a service mark to identify and distinguish Applicant's services from those of others and to indicate the source of Applicant's services.

When the refusals were made final, Applicant appealed and filed a request for reconsideration. After the Examining Attorney denied the request for reconsideration, the appeal was resumed. We affirm the refusal under Section 2(e)(1), and for the reasons discussed below, have treated the refusal to register under Sections 1, 2, 3 and 45 not as a separate ground but as an elaboration of the descriptiveness refusal.

## DISCUSSION

### A.     Clear Error Standard and Review

We first address a procedural matter regarding the application of the "clear error" standard during prosecution. As the examination history shows, the Examining Attorney originally approved the mark in the application for publication, and after the time for opposition had passed without an opposition being filed, the Office issued a notice of allowance setting the time for Applicant to file its statement of use. After Applicant filed its statement of use, the refusals that are the subject of this appeal were raised and ultimately made final.

Section 1109.08 of the TMEP provides that examination of a statement of use is generally limited to determining issues related to the statement of use itself, but a refusal unrelated to the statement of use may be made if the failure to issue the refusal at the time of the initial Office Action was a clear error or evidence supporting a new refusal or requirement becomes available during the time that has elapsed since initial examination. Thus, if the examining attorney determines that a clear error was made during initial examination, i.e., an error that, if not corrected, would result in issuance of a registration in violation of the Trademark Act or applicable rules, the examining attorney must issue any refusals or requirements, even if they could or should have been previously raised during initial examination of the subject application. TMEP § 706.01.

Applicant argues that the Examining Attorney's failure to refuse registration under Section 2(e)(1) at the time of the initial Office Action was not a clear error, and thus making such refusal during examination of the statement of use was improper. Applicant seeks the Board's review and determination regarding whether the failure to issue the refusal during initial examination (or at any time prior to the issuance of the notice of allowance) was a clear error. The Examining Attorney contends that because the clear error standard is merely an internal, "administrative guideline," it is unnecessary to provide Applicant with a showing of clear error, and Board review of the Office's decision to issue the refusal following examination of the statement of use is unavailable.

The basis for the application of the clear error standard has evolved over time. Citing the Eighth Edition of the TMEP (in effect from October 2011 to October 2012),[4] Applicant argues that where a descriptiveness refusal is not issued until examination of the statement of use, the evidence of descriptiveness must be "substantial and unequivocal," and there is no clear error if "reasonable minds could differ" as to the propriety of the refusal. However, the current version of the TMEP requires neither "substantial and unequivocal" evidence as a prerequisite to a finding of clear error, nor a finding that reasonable minds could not differ as to the result. Rather, it merely defines clear error as that which, if not corrected, would result in the improper issuance of a registration. Further, the current TMEP states explicitly that the determination of whether to issue a refusal is within the discretion of the Office and that the standard of clear error is an internal guideline only:

> The term 'clear error' refers to an administrative internal guideline used by the USPTO to determine whether an examining attorney should issue a refusal or requirement that could or should have been raised in a previous action.
>
> …
>
> The internal "clear error" standard is merely an administrative guideline. It does not confer on an applicant any entitlement to a showing of clear error, nor does it impose a higher standard of proof on the examining attorney than is otherwise required to establish a *prima facie* case for the refusal or requirement.

TMEP § 706.01.

---

[4] Applicant filed its statement of use on September 9, 2012.

In two seminal cases, *In re Sambado & Son Inc.,* 45 USPQ2d 1312, 1314-15 (TTAB 1997), and the later *In re Jump Designs LLC,* 80 USPQ2d 1370, 1373 (TTAB 2006), the Board declined to consider the procedural issue of whether the examining attorney properly applied the "clear error" standard, although in both cases the Board did address the applicants' challenges to the substantive refusals.[5] In *Sambado*, the applicant initially sought to register its mark on the Principal Register. It amended the application to the Supplemental Register in response to a descriptiveness refusal issued during examination of applicant's statement of use. It also filed a petition to the Commissioner requesting review of the Office's determination that clear error was committed in failing to issue the Section 2(e)(1) refusal during the initial examination. The petition was dismissed as premature and the application was finally refused registration on the Supplemental Register on the ground that the proposed mark was generic. On appeal, the Board found that the determination of clear error "is properly reviewable on petition to the Commissioner," and noted that the applicant should have waited to file its petition until after issuance of a final refusal of registration by the examining attorney. In *Jump Designs*, the Board reiterated that even in cases where the examining attorney had not enunciated a finding of clear error, an applicant's remedy for a perceived misapplication of the standard (as in the situation where an examining attorney issues a refusal during examination of the statement of use) would be by

---

[5] The Board did remark, in a footnote in *Sambado*, that the Trademark Examining Operation was considering a review of the application of the clear error standard, and that it was expected to issue formal guidelines on the subject. 45 USPQ2d at 1314 n.4.

way of petition to the Director (previously known as the Commissioner). As noted, however, the Board then reached the applicant's argument on the substance of the refusal.

Although the cases suggested discretionary review could be had by way of a petition to the Director, the Sixth Edition (2010) of the TMEP was amended to specifically state that a petition to the Director is not appropriate where the refusal is based on substantive grounds, including Section 2(e)(1):

> The question of whether a refusal or requirement was procedurally proper is reviewable on petition under 37 C.F.R. § 2.146. However, "[q]uestions of substance arising during the *ex parte* prosecution of applications, including, but not limited to, questions arising under §§ 2, 3, 4, 5, 6 and 23 of the Act of 1946, are not considered to be appropriate subject matter for petitions. ... " 37 C.F.R. § 2.146(b). Thus, the Director cannot consider on petition whether the issuance of or failure to issue a substantive refusal was a "clear error."

TMEP § 706.01.

The current version of the TMEP continues to follow the *Sambado* and *Jump* decisions, insofar as it notes the Board's involvement in review of a substantive refusal made during examination of a statement of use is limited to determining "only the correctness of the underlying substantive refusal of registration." TMEP § 706.01. The current TMEP also contains the above-referenced limitation on an applicant's right to petition the Director.

In light of these developments, we take this opportunity to clarify whether an applicant may, at the Board, challenge the USPTO's determination that the examining attorney committed "clear error" by failing to make a substantive refusal

during initial examination (that is, at any time prior to issuance of a notice of allowance), which he or she then made during examination of the statement of use. We hold that an applicant may not directly challenge the Office's determination under the clear error standard and that the only way an applicant may challenge a refusal that was issued during examination of the statement of use under the clear error standard is by appealing the merits of that final refusal to the Board.[6]

We recognize that this leaves applicants without recourse to specifically contest the application of the clear error standard, but applicants are not entitled to an additional layer of review, between the examining operation and the Board regarding a substantive refusal just because there is an ancillary procedural component that necessarily goes along within it. Although the USPTO does have a policy that all possible refusals and requirements should be issued in the first Office action, doing so is not a requirement of statute or regulation, and the Office has the inherent discretion to issue a requirement or refusal that it finds is correct at any stage in the prosecution of an application. *Cf. Last Best Beef LLC v. Dudas*, 506 F.3d 333, 84 USPQ2d 1699, 1704 (4th Cir. 2007) (finding that the USPTO acted within its inherent authority to cancel the issuance of two registrations issued in violation of a specific federal statute and noting that "federal agencies, including the USPTO, have broad authority to correct their prior errors"); *BlackLight Power, Inc. v. Rogan*,

---

[6] We note that the Board can only decide whether an applicant *at the Board* may challenge an examining attorney's reliance on the clear error standard. However, the TMEP is explicit that the Office will likewise not entertain a petition to the Director challenging an examining attorney's internal determination that a clear error was committed.

295 F.3d 1269, 63 USPQ2d 1534, 1537-38 (Fed. Cir. 2002) (affirming that USPTO officials reasonably acted within their authority when withdrawing a patent from issuance in order to fulfill the USPTO's mission to issue only valid patents). Allowing an applicant to seek review of the procedural propriety of raising a substantive refusal during examination of the statement of use is tantamount to holding the Office to a higher standard of proof for the refusal. Adjudication of the substantive refusal implicitly decides the propriety of the refusal. Thus, the applicant's remedy is to contest the substantive requirement or refusal itself, as such review subsumes the question of whether the failure to issue such requirement or refusal would have resulted in issuance of a registration that was in violation of the applicable section of the Lanham Act. As noted above, we therefore overrule *Sambado* and *Jump Designs* to the extent discussion therein, of any ability to challenge a clear error determination in an appeal to the Board or by way of petition to the Director, is in conflict with current Office practice.

Accordingly, we decline to consider Applicant's claim that the Office erred in finding that failing to raise the Section 2(e)(1) ground for refusal during examination of the statement of use was a clear error.

B.     Failure to Function

Turning next to the refusal under Sections 1, 2, 3 and 45, we find the refusal has not been fully articulated. The evidence shows that the term ".blog" has been

proposed as the "new generic top-level domain (new Domain Extension) for blogs"[7] and that it is likely that ICANN will launch the extension ".blog" as a new generic top-level domain name ("gTLD").[8] The Examining Attorney argues that the applied-for mark "would be seen by consumers as a gTLD,"[9] and that because Applicant is providing "Internet-based services that are broad enough to include providing specific information about websites with the gTLD .BLOG or specific information about the gtLD [sic] .BLOG at the request of customers,"[10] the term DOTBLOG does not function as a service mark. While we agree that a mark composed solely of a gTLD (even with DOT spelled out) may fail to function as a trademark for domain name "registry operator or registrar services,"[11] Applicant is not offering domain name services that are the same as, or related to, registry operator or registrar services for a potential ".blog" gTLD. Thus, although Applicant's designation DOTBLOG, if considered apart from the identification of services, may be seen as a unitary gTLD similar to .com, .net, or .biz, nothing in the record reflects that the

---

[7] At https://www.google.com, attached to the June 4, 2014, denial of Applicant's request for reconsideration. *See also* Internet evidence attached to final Office Action dated November 15, 2013, discussing the anticipated ".blog" domain, such as at http://icannwiki.com and http://blogdomains.co/.

[8] Applicant contends, however, that consumers are unlikely to be aware of the status of ICANN's new gTLD procedures or that ".blog" is intended as a gTLD. Applicant's relies on an article from www.Afilias.com entitled "dot Brand or dot What?: Afilias new gTLD Research Report 2013" This survey reports on a poll of 2,000 U.S. adults taken in December 2012 to determine consumer attitudes to the new gTLDs. The survey found that only 22% of adults overall were aware that ICANN was planning to launch new gTLDs.

[9] Examining Attorney's Brief at (unnumbered) p. 15, 11 TTABVUE 15.

[10] 11 TTABVUE 16.

[11] TMEP § 1215.02(d) defines a "registry operator" as one who maintains the master database of all domain names registered within a TLD, and a "registrar" as an entity through which domain names may be registered.

recitation of services "providing specific information as requested by customers via the Internet" should be understood to encompass registration of .blog domain names, maintaining a database of .blog domain names, or the provision of domain name services that are related to those activities. Applicant's recitation of services does not indicate that it would have any role in establishing such a domain, in registering blog names for such a domain, or that Applicant would otherwise be involved in administering the anticipated ".blog" domain. Accordingly, the failure to function ground under Sections 1, 2, 3 and 45 as stated by the Examining Attorney in his refusal is ultimately inapplicable to the facts set forth in the application, and we do not consider it further as a separate basis for refusal. Instead, as discussed below, the arguments advanced by the Examining Attorney all speak to alternate theories under Section 2(e)(1), and we have considered them on this basis. The likelihood that such a domain will be established supports one of two equally plausible grounds for finding Applicant's mark to be descriptive. We have not otherwise considered the refusal under Sections 1, 2, 3 and 45.

C.    Descriptiveness

Trademark Act § 2(e)(1) prohibits registration of an alleged mark which is merely descriptive of the applicant's goods or services. A term is deemed to be merely descriptive of goods or services if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012). *See also, In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828 (Fed. Cir. 2007); *In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009

(Fed. Cir. 1987). It is not necessary that a term describe all of the properties or functions of the goods or services in order for it to be considered merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute or feature about them. Moreover, whether a term is merely descriptive is determined in relation to the goods or services for which registration is sought. *See Chamber of Commerce*, 102 USPQ2d at 1219.

Applicant has applied to register the designation DOTBLOG for "providing specific information as requested by customers via the Internet." The Examining Attorney argues that Applicant's applied-for mark is merely descriptive of a service that provides information regarding weblogs. A weblog, or "blog," is an online journal that is shared with others on the Internet.[12] It is also used as a verb to mean "to read, write or edit a shared online journal."[13] The Examining Attorney argues that Applicant essentially summarizes blog posts from the Internet as requested by customers, and that consumers "will see the commercial impression of the mark as lying solely in the descriptive wording BLOG" because the term DOT in the adopted term has no trademark significance other than as the "articulation of the dot that appears before wording in a web address."[14] As noted above, the Examining Attorney further argues that Applicant is providing Internet-based

---

[12] At http://www.freedictionary.org; attached to October 5, 2012 Office Action. According to the Wikipedia entry submitted by Applicant, the term "weblog" was coined in 1997; shortly thereafter it was shortened to "blog" and is used both as a noun and a verb. At http://en.wikipedia.org/wiki/Blog; attached to Applicant's April 5, 2013 response.

[13] At http://www.freedictionary.org; attached to October 5, 2012 Office Action.

[14] 11 TTABVUE at 6.

services that are broad enough to include providing specific information about the anticipated ".blog" domain. In this regard, the Examining Attorney argues that Applicant's mark "is also descriptive because .BLOG (DOTBLOG) is a generic top-level domain (gTLD) that will soon be active and available to consumers, and it is intended for blog-related services and goods."[15] Applicant argues that it "does not provide blogs, nor or [sic] any service that is a feature of blogs or blogging"[16] and that its applied-for mark as a whole "is unitary, with the word DOT suggesting an online service related to blogs."[17]

Although Applicant does not operate a blog on the Internet, Applicant provides information that may be derived from blogs or be for blogs. Applicant's specimens of use, which are copies of webpages from its website, start with the tag line, "Need to know what the buzz is within the blogosphere?"[18] As explained in these webpages, "DotBlog is a service in which we use proprietary search techniques to find relevant and current blog posts relating to any given search query." A search query "can be any term, phrase, business, product or name." Applicant provides its clients with a "synopsis of what the blogosphere is blogging about you, your business, any given

---

[15] Id.

[16] Appeal Brief p. 6, 9 TTABVUE at 7.

[17] *Id.*

[18] We take judicial notice of the definition of "blogosphere" from www.merriam-webster.com. The term is defined as "all of the blogs on the Internet as a collective whole." Judicial notice may be taken of dictionary evidence that is available in print format. *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.,* 213 USPQ 594 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *see also,* TBMP §712.01 (3d. ed. rev. 2012).

The pages bear the following URLs: http://www.dotblog.net/how-it-works/, http://www.dotblog/about-us/, and http://www.dotblog.net/.

industry or any given product." Applicant offers a choice of three plan levels: at the first level, a summary report of 20 blogs is provided; at the second level a more detailed report of 50 blogs is provided, and at the highest level, Applicant will "research 100 related blog posts" and provide "information at a corporate level." As shown by Applicant's specimens, given the meaning of the word BLOG, its use in the applied-for mark immediately describes Applicant's information services. *See, e.g., In re Carlson,* 91 USPQ2d 1198 (TTAB 2009) ("Of course, specimens and promotional material may be used to prove that a mark is merely descriptive, and statements made in them can show that a term describes a feature or characteristic of the goods or services."); *In re Hunter Fan Co.,* 78 USPQ2d 1474, 1476 (TTAB 2006) (finding that the applicant's use of applied-for mark, as evidenced in its specimen of use, "highlights the descriptive nature of this term"); *see also Chamber of Commerce,* 102 USPQ2d at 1220 (content of applicant's website and articles discussing the activities of chambers of commerce constituted substantial evidence supporting the Board's determination that NATIONAL CHAMBER is merely descriptive); *In re Nett Designs,* 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) (looking at applicant's advertising brochures in connection with determining whether consumers would perceive mark as descriptive); *In re Abcor Dev. Corp.,* 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978) (in descriptiveness case, Court stated, "Evidence of the context in which a mark is used in labels, packages, or advertising materials directed to the goods is probative of the reaction of prospective consumers to the mark.").

As for the term DOT, it represents the standard pronunciation of the punctuation mark (a period) that separates different address levels in an Internet address,[19] and, as used in the mark, would be perceived as merely indicating the online nature of Applicant's services. That is, the term DOT in Applicant's applied-for mark advises prospective purchasers that Applicant's services may be requested and provided via the Internet.[20] As Applicant notes, "Many consumers have come to understand the presence of the word and/or the punctuation mark 'dot' suggestively, to refer generally to online services."[21] The third-party registrations submitted by Applicant of marks that start with DOT corroborate this meaning of the term DOT. *See Institut National Des Appellations D'Origine v. Vintners International Co.,* 958 F.2d 1574, 22 USPQ2d 1190, 1196 (Fed. Cir. 1992) ("[T]hird party registrations show the sense in which the word is used in ordinary parlance and may show that a particular term has descriptive significance as applied to certain goods or services."). Applicant relies on these registrations to show that marks containing the term DOT have been registered without a disclaimer of that term. However, the vast majority of the prior registrations are compound word marks and are thus

---

[19] As defined at http://www.dictionary.com, attached to Applicant's April 5, 2013 response.

[20] We are unpersuaded by Applicant's argument that the term "dot" would be perceived as meaning "dotting the Internet" or otherwise have meaning as a double entendre.

[21] 9 TTABVUE 13.

treated as unitary marks; no disclaimer of DOT would have been required.[22] *See generally* TMEP § 1213.05(a).

Considering Applicant's applied-for mark in its entirety, we find that each component has retained its character as merely descriptive or without trademark significance in relation to the services, and that the composite term does not present a new meaning that is not itself merely descriptive. *See, e.g., In re Oppedahl & Larson LLP,* 373 F.3d 1171, 71 USPQ2d 1370 (Fed. Cir. 2004) (PATENTS.COM held merely descriptive of computer database management software); *In re Tower Tech, Inc.,* 64 USPQ2d 1314, 1316-17 (TTAB 2002) (SMARTTOWER merely descriptive of commercial and industrial cooling towers); *In re Sun Microsystems Inc.,* 59 USPQ2d 1084 (TTAB 2001) (AGENTBEANS merely descriptive of computer programs for use in developing and deploying application programs). Consumers will immediately understand the term DOTBLOG, when used in association with Applicant's services of "providing specific information as requested by customers via the Internet," as describing a website that may feature information for blogs, or be related to blogs, regardless of the domain in which the blogs reside.

Alternatively, in anticipation of ICANN's activation of the .blog gTLD, consumers are also likely to perceive the mark as related to information gleaned from the ".blog" domain. When used in association with Applicant's services, which,

---

[22] To the extent Applicant is arguing that there is no likelihood of confusion between the marks, because consumers "have come to distinguish between the large number of various marks and/or TLDs that contain the word 'Dot'," 9 TTABVUE 13, this argument is misplaced because there is no refusal under Section 2(d).

according to Applicant's own promotional statements, focus on the searching of blogs, even for those who see the term DOTBLOG as a top level domain name extension, the mark would still be considered merely descriptive because consumers would perceive the mark as conveying the impression of "providing specific information" from searches of sites on the ".blog" domain. *Cf. In re theDot Commc'ns Network LLC,* 101 USPQ2d 1062, 1067 (TTAB 2011) (finding the term ".music" to engender the commercial impression of a top-level domain name and be merely descriptive of Internet services having applications related to music).

The evidence of record shows that the term DOTBLOG immediately describes a key aspect of Applicant's Internet-based services, namely, that Applicant provides specific information as requested by customers via the Internet after conducting searches of websites, some of which may be blogs (whether or not they ultimately contain the extension ".blog" as their gTLD) and some of which may not be blogs but contain specific information about blogs. Accordingly, when considered as the coupling of a term ("DOT") that indicates Applicant provides an Internet-based service with a term ("BLOG") that describes places on the Internet, regardless of the domain in which those webpages reside, DOTBLOG is merely descriptive of Applicant's services of "providing specific information as requested by customers via the Internet."

***Decision****:* The refusal to register Applicant's mark DOTBLOG under Trademark Act § 2(e)(1) is affirmed. The refusal to register Applicant's mark DOTBLOG under Sections 1, 2, 3 and 45 is inapposite for reasons discussed above and has not been

considered other than as an alternative basis for affirming the refusal under Section

2(e)(1).